## UNITED STATES DISTRICT COURT

## FOR THE

## WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ESTATE OF ERIC L. GUZIK, deceased, by CAROL L. GUZIK as Executrix of ERIC L. GUZIK ESTATE, CAROL L. GUZIK, individually, ANTHONY GUZIK, individually, and TERESSA M. WATSON, individually, | ) ) ) ) ) ) Civil Action No. ____ |
| Plaintiffs, | ) ) ) |
| v. | ) ) ) |
| UNITED STATES OF AMERICA, | ) ) |
| Defendant | ) ) |

## COMPLAINT

AND NOW COMES the Plaintiffs, by and through their attorney, JOSEPH MASSARO, ESQUIRE, and files this Complaint against Defendant, the United States of America, as set forth in the following statement:

## I. JURISDICTION

1. This is an action arising under the Federal Tort Claims Act, 28 U.S.C. §§2671 *et seq*. This Court is vested with jurisdiction pursuant to 28 U.S.C. §1346(b).

## II. PARTIES

2. Plaintiff Carol L. Guzik is an adult individual who resides in Latrobe, Westmoreland County, Pennsylvania 15650.

3. Plaintiff Anthony J. Guzik is an adult individual who resides in Latrobe, Westmoreland County, Pennsylvania 15650.

4. Plaintiff Teressa M. Watson is an adult individual who resides in Derry, Westmoreland County, Pennsylvania 15627.

5. The Plaintiff Carol L. Guzik was appointed Executrix of the Estate of Eric L. Guzik deceased on August 8, 2008 in Westmoreland County, under No. 65-08-1691.

6. The names of the persons entitled to recover claims for wrongful death and survival are the Estate of Eric L. Guzik, Carol L. Guzik, Anthony J. Guzik, and Teressa M. Watson.

7. At all times relevant hereto, Eric L. Guzik (Decedent) was the husband of Carol L. Guzik. Decedent had a date of birth of February 8, 1944, and was 64 years of age upon his death.

8. Anthony J. Guzik and Teressa M. Watson are the legal children of Decedent. Anthony was legally adopted by Decedent when Anthony was a child. Teressa is the natural born child of Decedent.

9. Defendant is the United States of America.

10. Defendant, United States of America, provides health care services through the Department of Veterans Affairs, a/k/a VA Pittsburgh Healthcare System, which

has a place of business at 5274 Route 30 East, Suite 10, Greensburg, PA 15601, and with a headquarters located at 810 Vermont Avenue NW, Washington DC 20420.

### III. VENUE

11. All of the Plaintiffs reside within the geographic area served by the United States District Court for the Western District of Pennsylvania.
12. All of the events that gave rise to this cause of action occurred within the geographic area served by the United States District Court for the Western District of Pennsylvania.
13. Venue properly lies in the United States District Court for the Western District of Pennsylvania.

### IV. ADMINISTRATIVE CLAIMS

14. On March 26, 2008, Decedent, during his lifetime, submitted a claim in the amount of $2,000,000 to the Department of Veterans Affairs, which agency, on May 15, 2009, denied the claim by letter.
15. On June 26, 2009, following Decedent's death, Plaintiffs submitted a claim in the amount of $5,000,000 to the Department of Veterans Affairs, which agency, on June 30, 2009, denied the claim

### V. FACTUAL ALLEGATIONS

16. On or about May 3, 2006, Decedent went to the Greensburg VA medical facility where he had a PSA test taken to screen for prostate cancer.

17. The doctor who provided the PSA test was Rashida Mahmud, M.D. At all times relevant to the underlying claim, United States of America, through the Department of Veterans Affairs a/k/a VA Pittsburgh Healthcare System, had hired Dr Mahmud to practice medicine as its employee, agent, servant, and/or ostensible agent and apparent agent, at its medical facilities located in Greensburg, Pennsylvania and Pittsburgh, Pennsylvania.

18. The PSA test taken on May 3, 2006 showed a result of an elevated PSA level of 5.64 H ng/mL.

19. Immediately following the May 3, 2006 PSA test, Dr. Mahmud did not order a retesting of Decedent's PSA level nor did Dr. Mahmud order a biopsy or additional testing.

20. Immediately following the May 3, 2006 PSA test, Dr. Mahmud did not contact Decedent's primary care doctor, Oscar Reyna, nor call a special meeting with Decedent and other health care personnel to discuss risks and/or seriousness of PSA test.

21. At that time Decedent was seen, diagnosed, observed and treated at the Greensburg VA facility by employees, agents, servants and of the United States of America, VA Pittsburgh Healthcare System, including Dr. Rashida Mahmud.

22. Immediately following the May 3, 2006 PSA test, VA Pittsburgh Healthcare personnel did not contact Decedent's primary care doctor regarding test results nor order any additional tests or screening for Decedent.

23. Nine (9) months later on or about February 5, 2007, Decedent went for his yearly check at the Greensburg VA medical facility. At that time his PSA level was tested and the results showed a level of 52.68 H ng/mL.

24. On or about February 12, 2007, Decedent returned to the Greensburg VA medical facility having complaints of frequent urination. A rectal exam was performed. The results of the digital rectal exam were abnormal. At that time Decedent was to be referred to the Urology Clinic at the VA Hospital in Pittsburgh.

25. In March of 2007 Decedent underwent transrectal ultrasound guided multiple core needle biopsy at VA PHS urology, which revealed adenocarcinoma of the prostate with Gleason score 9.

26. After the biopsy, Decedent was seen in follow up at the VA where he was diagnosed with deep venous thrombosis and was placed on anticoagulation with Coumadin and Lovenox.

27. Within days he developed urinary bleeding, acute anuria, and severe pelvic pain and was admitted to Latrobe Hospital on April 9, 2007.

28. Upon admission to Latrobe Hospital, Decedent experienced acute prostate bleeding with blood clots in the bladder outlet obstruction that required placement of Foley catheter for decompression and a large clot retrieval.

29. Decedent developed persistent and progressive swelling of the right lower extremity and renal insufficiency.

30. Decedent then underwent the placement of inferior vena cava filter by an interventional radiologist to prevent pulmonary artery embolism due to deep venous thrombosis.

31. A bone scan and CT of the chest, abdomen and pelvis were taken of Decedent on April 11, 2007 showing diffuse metastatic disease.

32. On April 13, 2007, Decedent underwent Zoladex injection and thereafter underwent radiation therapy from May 2, 2007 through May 21, 2007.

33. Thereafter Decedent continued to undergo treatment for cancer including 6 cycles of chemotherapy ending in April of 2008.

34. As of June, 2008, Decedent was continuing to receive Zoladex injections and bisphosphonate therapy.

35. Also as of June 2008, Decedent was prescribed and taking oxycontin and oxycodone for breakthrough pain. He developed recurrent leg swelling and continued with taking Coumadin.

36. As of June 11, 2008, Decedent had been diagnosed with diffuse incurable metastatic prostate cancer and his prognosis was poor at that time and was given less than two years to live.

37. On August 8, 2008, Decedent died in his home.

38. In the death certificate, signature dated August 9, 2008, signed by Dr. Chatta from the VA Medical Center, the doctor listed cardio pulmonary arrest and metastatic hormone refractory prostate cancer as the cause of death.

## VI. FEDERAL TORT CLAIMS ACT

39. Paragraphs 1 through 38 are incorporated by reference as if set forth fully at length herein.

40. Plaintiffs file this action under the Federal Tort Claims Act against Defendant, the United States of America, for compensatory damages and other just relief as a result of the death of Decedent.

41. Employees and agents of Defendant, the United States of America, including Rashida Mahmud, M.D., while acting in the scope and office of their employment, negligently provided professional medical care to Decedent and breached the standard of care in the following ways:

    a. In failing to recognize the potential emergency, urgency, and/or seriousness of the May 3, 2006 PSA test results of 5.64 for Decedent;

    b. In failing to order a retesting of Decedent's prostate PSA level immediately after discovering Decedent's May 3, 2006 PSA test result;

    c. In failing to order a biopsy or other appropriate study of Decedent's prostate immediately after the May 3, 2006 PSA test result;

    d. In failing to contact and to notify Decedent's primary care physician, Oscar Reyna, of the May 3, 2006 PSA test result;

    e. In failing to provide correct or sufficient information to Dr. Reyna regarding the patient's condition and May 3 2006 PSA test results;

    f. In failing to respond to Decedent's change in PSA level as of May 3, 2006 from prior years test results, which required an immediate response and immediate testing;

    g.   In failing to properly and promptly respond to Decedent's May 3, 2006 PSA test result, until after Decedent's February 5, 2007 PSA test, at which time the cancer had already metastasized;

    h.   In failing to, in a proper and timely fashion, to know, understand, acknowledge, recognize, intervene, interpret, evaluate, consider and/or act upon the signs, symptoms, test results and or other factors relative to the condition of Decedent.

    i.   In failing to take all steps to avoid the spread of Decedent's cancer and improve his chances for survival;

    j.   By permitting Decedent's condition to progress, worsen, and continue, leading to metastasized prostate cancer;

    k.   By causing, permitting, and/or allowing Decedent's cancer to progress, worsen and continue to the degree that the disease became an incurable, terminal condition;

    l.   By causing delay in the diagnosis and treatment of Decedent's prostate cancer.

42. As a result of the negligence and carelessness of Defendant's employees and agents, Decedent's cancer was not promptly diagnosed or treated, causing Decedent to suffer from terminal metastatic prostate cancer and die prematurely on August 8, 2008.

43. As a result of the aforesaid negligence and carelessness Defendant's employees and agents, Decedent was forced to endure severe pain and suffering, mental

anguish, and agonizing medical/cancer treatment until his demise in August of 2008.

44. The injuries inflicted on Plaintiffs and the death of Decedent took place under circumstances where the United States of America, if a private person, would be liable to Plaintiffs and Decedent in accordance with the laws of the Commonwealth of Pennsylvania, the place where the acts and omissions occurred.

## COUNT I

## SURVIVAL ACTION

45. Paragraphs 1 through 44 are incorporated by reference as if set forth fully at length herein.

46. This Count is brought pursuant to and is authorized by the Pennsylvania Survival Act, Section 8302 of the Judicial Code, 42 Pa. C.S. § 8302.

47. Had Decedent survived, he would have been entitled to bring an action for his injuries.

48. As a direct and proximate result of the negligent and careless conduct of Defendant as alleged herein, Plaintiffs claim the following damages under the Pennsylvania Survival Act as follows:

   a. Damages for the conscious pain, suffering, and mental anguish endured by Decedent prior to his death;

    b. Damages for the loss of the happiness, enjoyment, and pleasures of life, which Decedent would have had during the remainder of his natural life which was terminated prematurely by his death;

    c. Loss of Decedent's earning capacity;

    d. Loss of earnings;

    e. All other damages permitted under the Pennsylvania Survival Act.

WHEREFORE, Plaintiff Carol L. Guzik, as personal representative of the Estate of Eric Guzik, demands judgment against Defendant for money damages, together with costs of suit and for all other relief the Court deems just, fair, and equitable.

## COUNT II

## WRONGFUL DEATH ACTION

49. Paragraphs 1 through 48 are incorporated by reference as if set forth fully at length herein.

50. This Count is brought pursuant to and is authorized by the Pennsylvania Wrongful Death Act, Section 8301 of the Judicial Code, 42 Pa. C.S. § 8301.

51. By reason of the aforesaid wrongful actions of the Defendant, Plaintiffs demand damages under the Pennsylvania Wrongful Death Act as follows:

    a. Funeral expenses and incidental expenses stemming from the administration of Decedent's Estate and his burial;

Case 2:05-cv-00275-DSC Document 1044 Filed 08/13/2009 Page 110 of 112

  b. Loss of Decedent's contributions and services that Plaintiffs would have reasonably expected from Decedent had he lived;

  c. Economic losses which would have enhanced the value of Decedent's estate had he lived;

  d. Loss of companionship, guidance, and comfort as a father and a husband;

  e. Medical expenses; and

  f. All other damages and injuries recoverable under Pennsylvania's Wrongful Death Act.

WHEREFORE, Plaintiffs demand judgment against Defendant for money damages, together with costs of suit and for all other relief the Court deems just, fair, and equitable.

                Respectfully submitted,

                _____/s/_____Joseph Massaro_____
                Joseph Massaro, Esquire
                Attorney for Plaintiffs

                Masssaro Building
                152 E. Otterman Street
                Greensburg, PA 15601

                724-834-5500
                jmassaroesq@comcast.net

# UNITED STATES DISTRICT COURT

## FOR THE

## WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ESTATE OF ERIC L. GUZIK, deceased, by CAROL L. GUZIK as Executrix of ERIC L. GUZIK ESTATE, CAROL L. GUZIK, individually, ANTHONY GUZIK, individually, and TERESSA M. WATSON, individually, | ) ) ) ) ) ) Civil Action No. \_\_\_\_ |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| UNITED STATES OF AMERICA, | ) ) |
| Defendant | ) |

**SUMMONS**

To the United States of America:

A lawsuit has been filed against you.

Within in 60 days after the service of this summons on you (not counting the day you received it), you must serve on plaintiffs an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiffs' attorney, Joseph Massaro, Esquire, whose address is 152 E. Otterman Street, Greensburg, PA 15601. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

DATE_____

_____
Clerk of Court